DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RSM 18, LLC,**
Appellant,

v.

**EXECUTIVE CENTRE, LLC,**
Appellee.

No. 4D2024-3283

[January 7, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Bradley G. Harper, Judge; L.T. Case No. 50-2023-CA-012436-XXXX-MB.

Kevin F. Richardson of Clyatt & Richardson, P.A., West Palm Beach, for appellant.

James S. Telepman of Cohen, Norris, Wolmer, Ray, Telepman, Berkowitz & Cohen, North Palm Beach, for appellee.

CIKLIN, J.

This appeal arises out of a commercial lease dispute between the appellant, RSM 18, LLC ("Tenant"), and the appellee, Executive Centre LLC ("Landlord"), that resulted in a summary judgment in favor of the Landlord. The trial court found that the Tenant failed to timely restore a security deposit that the Landlord had applied to back rent, and as such, was in default of the lease and not entitled to exercise a lease extension option. We agree with the Tenant that the trial court erred in granting summary judgment, where no evidence was presented that the Landlord had requested restoration of the deposit, which the Landlord was required to do under the lease. We reverse and remand for further proceedings on that ground and decline to address the other arguments raised, as those grounds are either without merit or moot.

The subject lease provides for numerous events of default, including "[f]ailure of Tenant to pay, within Ten . . . days following the due date thereof, any installment of rent or Additional Rent or any other sum herein required to be paid by Tenant," and "Tenant's failure to perform any other

covenant or condition of this Lease within Thirty . . . days after written notice and demand . . . ."  The lease further elaborates on use of the security deposit by the Landlord:

### 4. Security Deposit and Prepaid Rent.

> . . . Upon any default by Tenant hereunder, all or part of said deposit may, at the Landlord[']s sole option, be applied on account of such default and thereafter, Tenant shall promptly restore the resulting delinquency in said deposit, within (5) days from request thereof.  Failure to do so within Five (5) days after receipt of such demand shall constitute a breach of this Lease.

The lease also provides a procedure for exercising an option to extend the lease:

> Tenant shall provide the Landlord with notice of its intent to exercise each extension or all extensions no later than six (6) months prior to the termination of the then applicable term or extension term.  Notwithstanding the foregoing, Tenant shall have no right to exercise any extension option(s) if Tenant is then in default under this Lease.

In the spring of 2020, at the outset of the COVID-19 pandemic, the Tenant fell behind in its rent payments, and the Landlord applied the Tenant's deposit to the delinquency.  The Landlord emailed the Tenant on December 18, 2020 that the Tenant was in default of the lease for failure to pay rent.  Just under two weeks later, the Tenant paid all rent owed.

On May 7, 2021, the Tenant slid a check and letter under the Landlord's office door.  The check was for the total needed to restore the deposit.  The letter gave notice of the Tenant's intent to exercise its option to extend the lease for an additional five-year period commencing January 1, 2022.  The Landlord received the funds on May 13, 2021.  However, on May 10, the Landlord sent the Tenant an email, asserting that the Landlord had given the Tenant "notice of default on your lease which made the option invalid," and that "[e]ven though you brought your account current, please remember that I also used your security deposit and prepaid rent of $17,325.01 to assist you."

The Tenant ultimately sued the Landlord, seeking declaratory relief that the Tenant was not in default on May 7, 2021, and that the Tenant had properly exercised the option for extension on that day.  Further, the

Tenant argued it was entitled to possession of the premises until December 31, 2026, with no rent increase.

The Landlord's answer asserted:  the Tenant had defaulted in its obligation to pay rent and, as a result of the default, the Landlord had applied the deposit to the rent owed; the Tenant had failed to restore the deposit within five days, which constituted a breach of the lease; and the Landlord had declared the Tenant to be in default.  The Landlord also counterclaimed for eviction and breach of contract.

The Landlord moved for summary judgment, arguing, among other things:  "[a]fter paying the delinquent rent . . . on December 30, 2020, Tenant was still then in Default . . . as the Tenant had failed to replenish the [deposit]"; the Tenant had "forfeited" the extension option, as the option was "conditioned on the prompt and diligent performance of the terms of the Lease"; the landlord had declared the Tenant to be in default on or around December 18, 2020; and the Tenant had not replenished the deposit until May 13, 2021.  Thus, when the Tenant sought to exercise the extension option on May 7, the Tenant was still in default.  The trial court granted summary judgment for the Landlord.

On appeal, the parties dispute whether the Landlord's December 18, 2020 email to the Tenant constituted a request to restore the depleted deposit.  The email provides:

> [P]lease be advised that in accordance [with the] lease, page 2 section 2, Tenant shall have no right to exercise extension option if tenant is in under default.  Please also look at 15.1 Events of Default and 15.2 Rights of Landlord upon default.  At this time you have not been paying the full amount invoiced and as a courtesy I even applied your security deposit and prepaid rent to the past due balance as we had discussed.  But under no circumstances was there a forgiveness of rent.  As per your request, please be notified that you are in default of the lease and no right exists to exercise any options.  If you would be interested in purchasing the property, every consideration would be given to you . . . .

This email does not request, either explicitly or otherwise, the Tenant's restoration of the deposit.  The lease unambiguously provides for the Landlord's request to restore deposit funds as a prerequisite to a finding of breach based on the Tenant's failure to replenish the funds.  If the lease had merely required the Landlord to give the Tenant notice that the deposit had been depleted, then the December 18 email would have been sufficient

3

to trigger a breach of the lease when the Tenant failed to replenish within five days of the email. *See Vogue Optical Mfg. Co. v. Nat'l Van Lines, Inc.*, 339 So. 2d 676, 677 (Fla. 3d DCA 1976) (holding that letters sent to appellant, which referred to heavy losses as a result of missing or damaged equipment, were sufficient to give the required written notice of the losses which the appellant intended to claim). But the lease requires a "request" to restore the deposit. Although the December 18 email states that the Landlord had applied the deposit to the back rent owed, the email does not contain the Landlord's request for the Tenant to restore the deposit.

Finally, even if it could be said that the May 10 email could be viewed as a request to restore the deposit, the Landlord does not dispute that the deposit was restored within five days of that email. Based on the foregoing, we reverse the summary judgment and remand for further proceedings.

*Reversed and remanded for further proceedings.*

KUNTZ, C.J., and SHAW, J., concur.

\*     \*     \*

**Not final until disposition of timely-filed motion for rehearing.**

4